482 So.2d 873 (1986)
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HUMAN RESOURCES, In the Interest of Erica JOHNSON, Minor Child of Nyola Larkin, Plaintiff-Appellee,
v.
James D. RICE, Defendant-Appellant.
No. 17445-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1986.
*874 Sharp & Sharp by James Sharp, Jr., Monroe, for defendant-appellant.
James A. Norris, Jr., Dist. Atty., and Michael A. Jedynak, Asst. Dist. Atty., Monroe, for plaintiff-appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The State of Louisiana through the Department of Health and Human Resources brought this action against James D. Rice, pursuant to LSA-R.S. 46:236 et seq., to establish the paternity of the minor child born to Nyola Larkin. At trial, the state presented evidence to establish the paternity of the child. To defend against this claim, the defendant alone testified denying paternity. The trial judge subsequently found that the defendant was the natural father of Erica Johnson and ordered him to pay $150 per month in child support to the Department of Health and Human Resources for the benefit of the minor child, retroactive to January 1, 1985.
The defendant has appealed and argues that the state did not prove by a preponderance of the evidence that he is the biological father of Erica Johnson. He also contends that the trial court erred in allowing the testimony of the state's expert witness, Pat Wojtkiewicz, to be admitted at trial over defense objections. We affirm the trial court's judgment.
Nyola Larkin gave birth to Erica Johnson on September 13, 1976. Ms. Larkin testified that she engaged in sexual relations with the defendant twice in November and December of 1975, which resulted in her pregnancy. She testified further that she did not have sex with anyone else for a period of time beginning two months before and continuing two months after her sexual encounters with the defendant.
Ms. Larkin testified that, in her presence, defendant had acknowledged the child as his own and had provided small sums of money on several occasions. She also stated that upon her request, the defendant purchased diapers and gifts for the child.
The defendant testified that he did not have sex with Ms. Larkin until they lived together for brief periods of time in 1976 and 1977, after the child was born. He stated that prior to this, he had only visited Ms. Larkin twice at her sister's home.
The defendant testified that he knew Ms. Larkin had other boyfriends before and after their relationship. The testimony of Ms. Larkin and other state witnesses, however, indicated that during the period of conception of the child, Ms. Larkin was only involved with the defendant. Although the defendant also stated that he never acknowledged Erica Johnson as his own child, the testimony of the state's witnesses, albeit relatives of Ms. Larkin, was to the effect that they were aware that defendant visited the child a number of times after she was born and that his actions towards the child seemed to indicate a familial relationship.
Results of tests performed on samples of blood taken from the child, the mother, and the defendant were also introduced at trial by the state. Pat Wojtkiewicz, supervisor *875 of the Serology Section at the North Louisiana Crime Laboratory, was appointed by the court to perform the blood tests and he explained at trial what the results of these tests indicated. He stated that his analysis of these blood samples revealed that the defendant could not be excluded as the father of Erica Johnson. He could not state, however, that another man could not have been the father of the child. He noted that a "paternity index" was calculated which indicated that this defendant was 38 times more likely to be the father of Erica Johnson than another randomly selected black male. Mr. Wojtkiewicz explained that any paternity index past 20 is considered as "statistically significant" to indicate that the person being tested is the father.
The state has the burden of proving the defendant's paternity of the child by a preponderance of the evidence. LSA-C.C. Art. 209; State Through Dept. of Health and Human Resources, Support Enforcement Services, in Interest of Miller v. Smith, 459 So.2d 146 (La.App.2d Cir.1984); Succession of Washington, 308 So.2d 892 (La.App.2d Cir.1975); State v. Sharplin, 431 So.2d 864 (La.App.2d Cir.1983). The defendant argues that the state did not carry its burden of proof in this case. We disagree.
Ms. Larkin's testimony was totally unrebutted except for the defendant's denial of paternity as he argued that he did not have sex with Ms. Larkin until after the baby was born. Ms. Larkin's testimony, however, was supported by that of other state witnesses which indicated that the defendant was the only man seeing Ms. Larkin at the time of conception.
Obviously the trial judge chose to believe the testimony of the state witnesses rather than that of Mr. Rice. The trial court's determination of factual and credibility issues should not be disturbed by an appellate court in the absence of manifest error. State Through Dept. of Health and Human Resources, Support Enforcement Services, in Interest of Miller v. Smith, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). We do not find the trial court has erred in this case. The testimony of the mother, supported by the strong scientific evidence creates a preponderance of evidence establishing that the defendant is the biological father of Erica Johnson. This conclusion is further supported by the relationship maintained between the mother and defendant after the birth of the child and by the defendant's subsequent actions towards the child. Although these actions might not be sufficient to be considered as an informal acknowledgment, they show a feeling of responsibility towards the child.
The defendant further argues, however, that the scientific evidence adduced in this case should not have been considered at trial as Pat Wojtkiewicz should not have been accepted as an expert witness in paternity testing. The defendant argues that Mr. Wojtkiewicz has only testified in seven cases involving questions of paternity and that his educational background did not prepare him to be considered an expert in this field.
A trial court has great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. Friday's Plumbing & Heating Co., Inc. v. Byers, 415 So.2d 256 (La. App.2d Cir.1982). Furthermore, in the absence of a clear abuse of the trial court's discretion in accepting an expert witness, the appellate courts do not reject the testimony of the expert or find reversible error. Maxwell v. State, Through Dept. of Transp. and Development, 391 So.2d 1230 (La.App. 1st Cir.1980), writ denied 394 So.2d 281 (La.1980).
We find no clear abuse of the trial court's discretion in accepting Pat Wojtkiewicz as an expert in paternity testing. He testified at trial that he received a bachelor's degree in biology and a master's degree in microbiology. While these courses of study are not directly involved with paternity determinations, they substantially contribute to gaining expertise in this area. Mr. Wojtkiewicz further stated *876 that his on-the-job training at the crime lab and his knowledge gained from attending courses and seminars specifically related to paternity testing also contributed to his ability to perform this type of blood analysis and to testify concerning the results of such an analysis. Mr. Wojtkiewicz's performance of blood analyses on over one hundred occasions for the determination of paternity is further indicative of an absence of abuse of the trial court's discretion in accepting him as an expert witness in this field. Thus, the defendant's contentions are without merit.
Accordingly, for the foregoing reasons, the judgment of the trial court finding Mr. Rice to be the biological father of Erica Johnson and ordering him to pay monthly child support is affirmed.
AFFIRMED.